Jon G. Shadinger Jr., Esq.
Shadinger Law, LLC
717 E. Elmer Street, Suite 7
Vineland, NJ 08360
Phone (609) 319-5399
js@shadingerlaw.com
*Attorney for Plaintiff, Dennis Maurer*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
## TRENTON VICINAGE

| | |
|---|---|
| DENNIS MAURER, an Individual, | |
| Plaintiff, | |
| vs. | Case No. 3:24-cv-04289 |
| BIO INVESTMENT GROUP LLC, a New Jersey Limited Liability Company | **COMPLAINT** |
| Defendant. | |

### Introduction

Plaintiff, DENNIS MAURER, an individual, on his own behalf and on the behalf of all other similarly situated mobility impaired persons hereby sues the Defendant, BIO INVESTMENT GROUP LLC, a New Jersey Limited Liability Company, for injunctive relief, damages, attorney's fees, litigation expenses, and costs pursuant to the Americans with Disabilities Act, 42 U.S.C. §12181 et seq. ("ADA") and the New Jersey Law Against Discrimination, N.J.S.A. 10:5-1 et seq. ("LAD").

### The Parties

1.     Plaintiff, DENNIS MAURER, is an individual over eighteen years of age and is otherwise

1

sui juris.

2.      Defendant, BIO INVESTMENT GROUP LLC, owns or operates a place of public accommodation, in this instance a shopping center/plaza, alleged by the Plaintiff to be operating in violation of Title III of the ADA and the LAD.

<u>**Jurisdiction and Venue**</u>

3.      Defendant's property is a shopping center/plaza, known as Park Plaza, with several tenant spaces located at 550-608 Park Avenue, Freehold, New Jersey 08753, Monmouth County.[1]

4.      Venue is properly located in the District of New Jersey because venue lies in the judicial district of the property situs.  The Defendant's property is located in and does business within this judicial district.

5.      Pursuant to 28 U.S.C. § 1331 and 28 U.S.C. §1343, this Court has been given original jurisdiction over actions which arise from the Defendant's violations of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 et seq.[2]

6.      Jurisdiction over the state law claim vests with this Court pursuant to 28 U.S.C § 1367.

7.      The Defendant owns, leases, leases to, or operates a place of public accommodation as defined by the ADA and the regulations implementing the ADA.  The Defendant is thus required to comply with the obligations of the ADA.[3]

8.      Plaintiff, DENNIS MAURER, is an individual with disabilities as defined by and pursuant to the ADA.  Mr. Maurer has multiple sclerosis and therefore has a physical impairment that

---

[1] Property is also known as Block 110, Lot 9.05 on the Municipal Tax Map of Freehold Boro
[2] See also 28 U.S.C. § 2201 and 28 U.S.C. § 2202
[3] 28 CFR § 36.201(a) and 28 CFR § 36.104

substantially limits many of his major life activities[4] including, but not limited to, not being able to walk, stand, reach, or lift. Mr. Maurer, at all times, requires the use of a wheelchair to ambulate.

### Factual Background

9.     Mr. Maurer is a staunch advocate of the ADA. Since becoming mobility impaired (and having to fully rely on the use of his wheelchair to ambulate) he has dedicated his life to the elimination of accessibility discrimination so that he, and others like him, may have full and equal enjoyment of all public accommodations without fear of discrimination and repeated exposure to architectural barriers.

10.     Mr. Maurer continues to encounter architectural barriers at many of the places that he visits. Seemingly trivial architectural features such as parking spaces, curb ramps, and door handles are taken for granted by the non-disabled but, when implemented improperly, become arduous and even dangerous – the same holds true at the Property in instant matter.

11.     Further, the barriers to access that Mr. Maurer experiences at differing places of public accommodation are often similar in nature. For example, he is repeatedly faced with sloping in parking lots, improper curb ramps, and non-accessible restrooms (even when designated "accessible" or "handicapped"). He has become frustrated and disheartened by the repetitiveness of the complaints he has been forced to make to the employees and management at various establishments in the past, often to no avail. Thus, finds his redress through the ADA as Congress intended.

12.     Mr. Maurer has visited the Property on several occasions both as a patron, his last visits occurred on or about July 14, 2023, September 8, 2023, and January 27, 2024.  Mr. Maurer found

---

[4] as defined by 28 CFR § 36.105(b)(1-2)

that the Property was littered with violations of the ADA, both in architecture and in policy.

13.     Mr. Maurer will return to the Property in the future as incident to his usual nearby travels; such as when travelling to Freehold Raceway, the Freehold Raceway Mall, or performing inspections at nearby properties. Mr. Maurer shall make these visits not only as a patron but also to monitor any progress made with to respect to compliance – his hope being that those return visits are not made in vain.

14.     Prior to the onset of his disease and his ensuing disability, Mr. Maurer was a licensed thoroughbred horse trainer and assistant horse trainer for over twenty-five years. Horseracing remains his passion; he attends workouts, trainings, sales, and live racing whenever possible.

15.     The horse racing venues/farms frequently traveled to by Mr. Maurer include, but are not limited to, the following[5]:

   a.   Delaware Park Race Track, located at 777 Delaware Park Blvd, Wilmington, DE 19804.
   b.   Harrah's Philadelphia Racetrack, located at 777 Harrah's Blvd, Chester, PA 19013.
   c.   Parx Racing, located at 2999 Street Rd, Bensalem, PA 19020.
   d.   Penn National Race Course, located at 777 Hollywood Blvd, Grantville, PA 17028.
   e.   Freehold Raceway, located at 130 Park Ave, Freehold, NJ 07728.
   f.   Monmouth Park, located at 175 Oceanport Ave, Oceanport, NJ 07757.
   g.   Saratoga Racecourse, located at 267 Union Ave, Saratoga Springs, NY 12866.
   h.   Westampton Farm, a thoroughbred training facility located at 75 Oxmead Rd, Westampton, NJ 08060.

16.     The Property is located (1) just a few minutes from the Garden State Parkway, (2) one mile from Freehold Raceway, (3) close in proximity to several other properties inspected by Mr. Maurer

---

[5] Specifically related to his travels nearby this particular property; Mr. Maurer visits Freehold Raceway several times every year to attend races and workouts.

for continuing ADA compliance, and (4) in close proximity to the Freehold Raceway Mall.

17.     Finally, as it relates to his ongoing, continuous, and nearby travels to the Property - Mr. Maurer (having grown up in northeastern New York and spent the majority of his life in New Jersey) has accumulated friends and family across the region; including his children, grandchildren, nieces, and nephews; all of whom he visits regularly across New Jersey and New York.

18.     Mr. Maurer personally encountered exposure to architectural barriers and otherwise harmful conditions that have endangered his safety during his visits to the Property.

19.     The ADA has been law for over thirty (30) years, and yet the Property remains non-compliant. Thus, the Plaintiff has actual notice and reasonable grounds to believe that he will continue to be subjected to discrimination by the Defendant.

20.     Plaintiff has a realistic, credible, existing, and continuing threat of discrimination from the Defendant's non-compliance with the ADA with respect to the Property as described but not necessarily limited to the barriers he has personally experienced which are listed in Paragraph 25.

21.     Following any resolution of this matter Mr. Maurer will ensure that the Property undertakes the remedial work that is required under the appropriate standard and remains compliant with the ADA into the future.

### COUNT I
### Violation of Title III of the
### Americans with Disabilities Act, 42 U.S.C. § 12181, et seq.

22.     Plaintiff realleges and incorporates by reference all of the allegations contained in all of the preceding paragraphs.

23.     The Defendant has discriminated against the Plaintiff, and other similarly situated mobility

impaired persons, by denying access to, and full and equal enjoyment of, the goods, services, facilities, privileges, advantages and/or accommodations of the Property, as prohibited by the ADA.

24.     A preliminary inspection of the Property has shown that violations of the ADA exist.  That inspection, performed by Plaintiff's expert, further revealed that the remediation of all violations/barriers listed in Paragraph 25 are both technically feasible and readily achievable.

25.     The following are architectural barriers and violations of the ADA that Mr. Maurer has personally encountered during his visits to the Property:

**<u>Parking and Exterior Accessible Route</u>**

a.   The designated accessible parking spaces throughout the Property, are not maintained, lack compliant access aisles, fail to provide proper identification signage, and lead to non-compliant curb ramps; all in violation of the ADAAG and Sections 402 and 502 of the 2010 ADA Standards.  When making use of the accessible parking spaces Mr. Maurer was confronted with a lack of access aisles and improper curb ramps along his route; to avoid these obstacles he was forced to park away from the facility to ensure he would not become blocked out from accessing his van. From there he had to travel around other obstacles, and then through the traffic area of the lot in order to reach the tenant spaces. The remediation of these barriers is both technically feasible and readily achievable.

b.   The designated accessible parking areas throughout the Property fail to provide a compliant accessible route from the parking area to the tenant entrances; in violation of the ADAAG and Sections 402 and 502 of the 2010 ADA Standards. The route from the parking areas to the tenant entrances contains excessive sloping, abrupt changes of level, and is impeded by improper curb ramps.  Mr. Maurer was endangered by the obstacles when travelling from

his van to the tenant spaces and throughout the plaza. The remediation of this barrier is both technically feasible and readily achievable.

c. Due to the preceding deficiencies, which exist throughout the accessible parking areas, the Property fails to provide the requisite number of compliant accessible parking spaces and van-accessible parking spaces (as well as the requisite number of access aisles and van access aisles – some spaces have no access aisles at all), a violation of Section 502 of the 2010 ADA Standards. Due to the lack of accessible parking spaces and as detailed above, Mr. Maurer was forced to park away from the plaza so that he could freely access his vehicle without the fear of becoming blocked out by a car parking immediately next to him. The remediation of this barrier is both technically feasible and readily achievable.

**Entrance Access and Path of Travel**

d. The exterior accessible route which connects tenant spaces and parcel to parcel throughout the shopping center/plaza is impeded by excessive cross-sloping and abrupt changes in level; a violation of the ADAAG and Section 402 of the 2010 ADA Standards.  Mr. Maurer had to proceed with extreme caution when traversing the exterior route from tenant space to tenant space; excessive sloping present him with a tipping hazard while abrupt changes of level could damage the bottom of his wheelchair. The remediation of these barriers is both technically feasible and readily achievable.

e. The Property fails to provide a single continuous accessible route throughout the Property; a violation of the ADAAG and Section 402 of the 2010 ADA Standards. Due to excessive sloping and abrupt changes of level Mr. Maurer was forced to return to his vehicle, move, and then park in another area of the plaza in order to access the entire facility. The remediation of these barriers is both technically feasible and readily achievable.

f.  The Property fails to provide a compliant route to the adjacent street/sidewalk and/or the public transportation route. Mr. Maurer is precluded from accessing the Property from these areas due to the lack of an accessible route – the current route contains excessive sloping; a discriminatory omission which limits his options for access and transportation; a violation of ADAAG and Section 206.2.1 of the 2010 ADA Standards. The remediation of this barrier is both technically feasible and readily achievable.

**Access to Goods and Services**

g.  Mr. Maurer could not access payment counters or work surfaces as they are mounted beyond his reach; a violation of the ADAAG Section 7.2(1) and Sections 308 and 904 of the 2010 ADA Standards. These barriers have prevented Mr. Maurer from comfortably accessing these elements within the tenant spaces; their remediation is both technically feasible and readily achievable.

h.  Mr. Maurer could not access multiple tenant spaces without assistance due to the presence of abrupt changes of level (which could damage his wheelchair) and sloping at the base of the doors (which present a tipping hazard and prevent him from approaching doors); a violation of the ADAAG and Sections 404 of the 2010 ADA Standards. The remediation of these barriers is both technically feasible and readily achievable.

i.  Restaurant tenant spaces, including Trevi Pizza, Manhattan Bagel, Empanada Guy, and Golden Star, fail to provide accessible dining tables – in violation of the ADAAG and Section 902 of the 2010 ADA Standards. The remediation of these barriers is both technically feasible and readily achievable.

**Restrooms**

j.  Restrooms within tenant spaces, including those within Trevi Pizza, Manhattan Bagel, Park

8

Ave Grill, Empanada Guy, Golden Star, G&G Barber Shop, and Family Nails, are inaccessible to Mr. Maurer (and all mobility impaired persons). The barriers to access include incorrect signage, inaccessible water closets which lack the proper controls, and a lack of wheelchair maneuvering space; violations of the ADAAG and Section 601 of the 2010 ADA Standards.

k.  Restrooms within the aforementioned tenant spaces contain dispensers which are improperly mounted beyond Mr. Maurer's reach – beyond the allowable limits – in violation of the ADAAG and Section 308 of the 2010 Standards. Due to their improper location Mr. Maurer could not make use of dispensers within the restrooms; reaching beyond his capacity could cause him to fall from his wheelchair. The remediation of these barriers is both technically feasible and readily achievable.

l.  Restrooms within the aforementioned tenant spaces contain improper centerlines for the water closets and improperly mounted grab bars; a violation of the ADAAG and Section 604 of the 2010 ADA Standards. Due to these barriers Mr. Maurer could not safely make use of the water closets/toilets. The remediation of these barriers is both technically feasible and readily achievable.

m.  Restrooms within the aforementioned tenant spaces contain lavatories which lack the requisite knee and toe clearance; in violation of the ADAAG and Section 606 of the 2010 ADA Standards. Without the proper wheelchair clearance Mr. Maurer could not wash his hands nor make use of the sinks. The remediation of these barriers is both technically feasible and readily achievable.

n.  The doors used to access the restrooms within the aforementioned tenant spaces are impeded by improper signage and a lack of wheelchair maneuvering clearance; a violation

of the ADAAG and Section 404 of the 2010 ADA Standards. Due to the lack of wheelchair maneuvering clearance Mr. Maurer could not enter/exit the restrooms without assistance. The remediation of these barriers is both technically feasible and readily achievable.

26.    Each of the foregoing violations is also a violation of the ADA Standards for Accessible Design, originally published on July 26, 1991 and republished as Appendix D to 28 CFR part 36 ("1991 Standards"); the "2004 ADAAG", which refers to ADA Chapter 1, ADA Chapter 2, and Chapters 3 through 10 of the Americans with Disabilities Act and the Architectural Barriers Act Accessibility Guidelines, which were issued by the Access Board on July 23, 2004 and codified at 36 CFR § 1191, appendix B and D ("ADAAG"); and the 2010 Standards for Accessible Design ("2010 ADA Standards"), as promulgated by the U.S. Department of Justice.[6]

27.    The discriminatory violations described in Paragraph 25 may not be an exhaustive list of the ADA violations that exist at the Property, but they are the result of a preliminary inspection conducted by the Plaintiff and include all those personally experienced by Mr. Maurer.  Plaintiff requires thorough inspection of the Defendant's place of public accommodation in order to photograph and measure the architectural barriers which exist at the Property in violation of the ADA/LAD.

28.    Plaintiff, and other similarly situated mobility impaired persons, will continue to suffer discrimination, injury and damage without the immediate relief provided for by the ADA and requested herein.

29.    Defendant has discriminated against Plaintiff, and other similarly situated mobility

---

[6] 28 CFR § 36.104

impaired persons, by denying access to full and equal enjoyment of the goods, services, facilities, privileges, advantages and/or accommodations of its place of public accommodation or commercial facility in violation of the ADA.

30.     Defendant continues to discriminate against Plaintiff, and other similarly situated mobility impaired persons, by failing to remove architectural barriers, and communication barriers that are structural in nature.[7]

31.     Defendant continues to discriminate against Plaintiff, and other similarly situated mobility impaired persons, by failing to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford all offered goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities.[8]

32.     Defendant continues to discriminate against Plaintiff, and other similarly situated mobility impaired persons, by failing to take such efforts that may be necessary to ensure that no individual with a disability is excluded, denied services, segregated, or otherwise treated differently than other individuals because of the absence of auxiliary aids and services.[9]

33.     If the Defendant's facility is one which was designed and constructed for first occupancy subsequent to January 26, 1993[10] then the Defendant's facility must be readily accessible to and useable by individuals with disabilities in accordance with the 1991 Standards.

34.     Pursuant to 28 CFR § 36.402(a)(1) "any alteration" made to the Property after January 26, 1992, must have been made so as to ensure that, to the maximum extent feasible, the altered

---

[7] 42 U.S.C. § 12181(b)(2)(A)(iv)

[8] 42 U.S.C. § 12181(b)(2)(A)(ii)

[9] 42 U.S.C. § 12181(b)(2)(A)(iii)

[10] as defined by 28 CFR § 36.401(a)(2)

portions of the Property are readily accessible to and usable by individuals with disabilities, including individuals, like Mr. Maurer, who use wheelchairs. An alteration is deemed to be undertaken after January 26, 1992, if the physical alteration of the property begins after that date.[11] Discovery in this matter will reveal if and when such alterations have taken place at the Property, and to what corresponding technical and scoping specification the Defendant must meet/exceed to bring the Property into compliance with the ADA.

35.     Pursuant to 28 CFR § 36.304(a) Defendant shall remove all existing architectural barriers, including communication barriers that are structural in nature, where such removal is readily achievable.

36.     28 C.F.R. § 36.304(d)(2)(i) controls with respect to the corresponding technical and scoping specification to which each element - that has not been altered - must comply with or be modified to meet. Those are defined as follows:

a.   Elements that have not been altered since on or after March 15, 2012, must comply with the 1991 Standards.

b.   Elements that have existed prior to and have not been altered since on or after March 15, 2012, that do not comply with the 1991 Standards must be modified to comply with either the 1991 Standards or the 2010 Standards.

c.   Elements that have been altered on or after March 15, 2012, that do not comply with the 1991 Standards must be modified to comply with the 2010 Standards.

37.     Plaintiff is not required to notify Defendant of their violation of the ADA nor their ongoing discrimination prior to the filing of this action. To that end, Plaintiff has found that voicing

---

[11] 28 CFR § 36.402(a)(2)

concerns to employees and management, making phone calls, and writing letters is futile. In his experience the only way to spur action and achieve the accessibility required under the law is to file matters, like this one, and pray for the relief contained herein.

38.     Plaintiff is without adequate remedy at law and is suffering irreparable harm, including bodily injury consisting of emotional distress, mental anguish, suffering, and humiliation. Considering the balance of hardships between the Plaintiff and the Defendant, a remedy in equity is warranted.  The public interest would not be disserved by the issuance of a permanent injunction.

39.     Pursuant to 42 U.S.C. § 12205 and 28 CFR § 36.505, Plaintiff are entitled to recovery of attorney's fees, costs, and litigation expenses from the Defendant.

40.     Pursuant to 42 U.S.C. § 12188(a)(2), this Court is provided with authority to grant Plaintiff injunctive relief, including an order to require the Defendant to alter the Property and make such readily accessible and useable to the Plaintiff and all other persons with disabilities as defined by the ADA; or by closing the Property until such time as the Defendant cure their violations of the ADA.[12]

**WHEREFORE,** Plaintiff respectfully demands;

a.  The Court issue a Declaratory Judgment determining that the Defendant is in violation of Title III of the ADA.

b.  Injunctive relief against the Defendant including an order to (1) cure all ADA violations existing at the Property listed herein and those later found through discovery within the next six months; (2) to make the Property accessible to and usable by individuals with disabilities; and (3) to require the Defendant to make reasonable modifications in policies,

---

[12] 42 U.S.C. § 12188(b)(2)

13

practices or procedures, to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services.

c. An Order requiring the Defendant to cease its discriminatory practices and to maintain the requisite accessible features at the Property - as required by the ADA.

d. An award of attorney's fees, costs, and litigation expenses pursuant to 42 U.S.C. § 12205.

e. Such other relief as the Court deems just and proper and is allowable under Title III of the ADA.

## COUNT II
**Violation of New Jersey Law
Against Discrimination, N.J.S.A. 10:5-1 et seq.**

41.     Plaintiff realleges and incorporates, by reference, all of the allegations contained in all of the preceding paragraphs.

42.     The Property is a place of public accommodation as defined by N.J.S.A 10:5-5.

43.     New Jersey law provides that all persons shall have the opportunity to obtain all the accommodations, advantages, facilities, and privileges of any public place of accommodation without discrimination on the basis of disability.  This opportunity is recognized and declared to be a civil right.[13]

44.     As set forth above, the Defendant has violated the LAD by denying Mr. Maurer, and all other mobility impaired individuals, the full and equal enjoyment of the goods, facilities, services, and accommodations available at the Property.

45.     As a result of the aforementioned discrimination through repeated exposure to architectural

---

[13] Pursuant to N.J.S.A 10:5-4

barriers and other harmful conditions, Mr. Maurer has sustained bodily injury in the form of emotional distress, mental anguish, suffering and humiliation, in violation of the LAD.

**WHEREFORE**, Plaintiff respectfully demands;

a. That this Court assume jurisdiction.

b. The Court issue a Declaratory Judgment determining that the Defendant is in violation of the LAD.

c. An injunction ordering Defendant to immediately comply with the LAD by removing all architectural barriers listed herein or later found through discovery.

d. A monetary award consisting of the individual Plaintiff's damages – to the maximum extent permitted, attorney's fees, and litigation expenses; including expert's fees and costs.

e. An order requiring the Defendant to cease its discriminatory practices and to maintain the requisite accessible features at the Property - as required by the LAD.

f. Other relief that this Court deems just and proper and is allowable under the LAD.

Respectfully submitted on this 27th day of March 2024,

*/s/ Jon G. Shadinger Jr.*
Jon G. Shadinger Jr., Esq.
Shadinger Law, LLC
717 E. Elmer Street, Suite 7
Vineland, NJ 08360
Phone (609) 319-5399
js@shadingerlaw.com
*Attorney for Plaintiff, Dennis Maurer*

15